UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES GRAHAM, ELIZABETH WYMER, and NOAH B. KHOSHBIN, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | CIVIL NO. SA-15-CA-01054-XR |
| SAN ANTONIO ZOOLOGICAL SOCIETY, | * * * | |
| Defendant. | * * | |

## O R D E R

Before the Court is plaintiffs' Motion to Compel (docket nos. 29 and 32), to which defendant, San Antonio Zoological Society ("The Zoo") has responded (docket no. 31).  Upon consideration of the motion, response and applicable law, plaintiffs' motion is **GRANTED in part and DENIED in part.**

### BACKGROUND FACTS

Plaintiffs, James Graham, Elizabeth Wymer and Noah Khoshbin, are private individuals interested in protecting animals and viewing them in "humane conditions."  (Docket no. 1).  They state they have each been to the San Antonio Zoo and, at various times, have visited a female Asian elephant named "Lucky," that they maintain is being mistreated.  (Id.).  In particular, plaintiffs complain that Lucky, who arrived at the San Antonio Zoo in 1962, is kept isolated in a small enclosure, on a hard, unnatural, species-inappropriate substrate, and

without adequate shelter from the hot sun. (Docket no. 1). Graham further states that the last time he visited Lucky, she appeared overweight and listless, exhibiting "abnormal stereotypic behaviors, which are meaningless, repetitive movements such as bobbing her head and swaying back and forth." (Id.).

On December 1, 2015, plaintiffs sued defendant, the Zoo, a nonprofit organization, pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, alleging that defendant is harming and harassing Lucky. (Id.). Plaintiffs seek declaratory and injunctive relief, maintaining that they will each suffer irreparable injury if the Zoo does not agree to improve Lucky's conditions by providing her with a larger enclosure, access to adequate shelter from the sun, an appropriate and more natural substrate, and additional Asian elephants to allow for socialization; alternatively, plaintiffs seek to have Lucky relocated to a place that can provide these improved conditions. (Id.).

On February 5, 2016, plaintiffs served defendant with document requests and interrogatories. Plaintiffs complain that although defendant timely served its responses and objections, defendant refused to produce documents or respond substantively to most of plaintiffs' interrogatories and categories of

documents.    On  June  30,  2016,  plaintiffs  filed  the  present

motion which the Court now considers.  (Docket no. 29).

## **Applicable Law**

Federal  Rule  of  Civil  Procedure  26,  as  amended,  governs  the

scope of permissible discovery, providing that:

> Unless  otherwise  limited  by  court  order,  the  scope  of
> discovery  is  as  follows:  Parties  may  obtain  discovery
> regarding  any  nonprivileged  matter  that  is  relevant  to  any
> party's  claim  or  defense  and  proportional  to  the  needs  of
> the  case,  considering  the  importance  of  the  issues  at  stake
> in  the  action,  the  amount  in  controversy,  the  parties'
> relative  access  to  relevant  information,  the  parties'
> resources,  the  importance  of  the  discovery  in  resolving  the
> issues,  and  whether  the  burden  or  expense  of  the  proposed
> discovery  outweighs  its  likely  benefit.  Information  within
> this  scope  of  discovery  need  not  be  admissible  in  evidence
> to  be  discoverable.

FED.R.CIV.P. 26(b)(1).   A  party  seeking  discovery  may  move  for  an

order  compelling  production  against  a  party  that  has  failed  to

answer  an  interrogatory  or  to  produce  documents  requested

pursuant  to  Federal  Rules  of  Civil  Procedure  33  and  34.   ***See***

FED.R.CIV.P. 37(a)(3)(B)(iii)-(iv).   "[A]n  evasive  or  incomplete

disclosure,  answer,  or  response  must  be  treated  as  a  failure  to

disclose,  answer,  or  respond."  FED.R.CIV.P. 37(a)(4).

To  prevail  on  a  motion  to  compel  or  resist  a  motion  for

protective  order,  the  party  seeking  discovery  may  well  need  to

make  its  own  showing  of  many  or  all  of  the  proportionality

factors  set  out  in  Rule  26(b)(1);  however,  a  party  resisting

discovery  still  bears  the  burden  of  making  a  specific  objection

and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address--insofar as that information is available to it--the factors enumerated in Rule 26(b)(1). *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 435 (N.D.Tex. 2016)(*citing* FED.R.CIV.P. 26(b)(1)).

## DISCUSSION

### I.   Failure to provide documents

Plaintiffs move to compel information and documents relating to plaintiffs' claims that the Zoo is violating the ESA based on the inadequate conditions of Lucky's enclosure at the Zoo as well as other treatment. Initially, plaintiffs moved to compel the following: 1) complete copies of Lucky's medical and care records, as well as her "records predating 2014 back to at least 2006"; 2) records of other elephants previously housed at the Zoo that would have been exposed to the same or similar conditions as Lucky; 3) records relating to Lucky's enclosure, as well as to any Asian elephant area at the Zoo, including actual, planned, and/or rejected improvements; 4) documents and communications relating to concerns about the care, treatment or adequacy of the environment or enclosure of Lucky or any other Asian elephant from a) current or former Zoo board members, employees, officials, or staff, including veterinarians, dieticians, or elephant keepers, b) any

4

governing, regulatory, or accrediting body and c) members of the public or any person or entity not covered by Request Nos. 9 or 10; 5) documents and communications relating to a) the Zoo's compliance efforts with the ESA relative to Lucky or other Asian elephants, b) the Zoo's accreditation from the Association of Zoos and Aquariums ("AZA"), including the Zoo's efforts to comply with the AZA's standards with regard to Lucky or other Asian elephants, and c) any request or proposed request for variances from the AZA's standards, including any variances relating to Lucky; and 6) records relating to the Zoo's initial disclosures regarding a) United States Department of Agriculture ("USDA") Animal and Plant Health Inspection Service ("APHIS") inspection reports created during relevant time periods reflecting the Zoo's compliance with applicable laws and/or regulations, b) communications between the Zoo and USDA APHIS, c) communications between the Zoo and United States Fish and Wildlife Service ("USFWS"), and d) documents reflecting the Zoo's care of Lucky in satisfaction of the minimum standards for facilities and care under the Animal Welfare Act. In particular, plaintiffs sought an order compelling the Zoo to produce documents responsive to Request Nos. 4, 6-7, 9-11, 13, 15, 17-18, as well as the documents listed in the Zoo's initial disclosures. Additionally,

plaintiffs sought an order compelling responses to Interrogatory Nos. 3 and 4.

After plaintiffs filed their motion, the Zoo produced a large number of documents responsive to plaintiffs' requests. Nevertheless, plaintiffs maintain in their reply that "[d]espite that recent and belated production, the Zoo's production remains grossly deficient" because the Zoo limited its production of documents regarding Lucky to a two-year period and further, flatly refused to provide plaintiffs with: 1) records of other elephants exposed to the same challenged conditions that would demonstrate those conditions caused harm to Lucky; 2) communications with the American Zoological Association ("AZA") regarding the impact of those very challenged conditions on Lucky's health and welfare; 3) documents relating to any plans or efforts to obtain additional Asian or African elephants for the Zoo or improve the challenged conditions; and 4) documents relating to the Zoo's compliance with the ESA relative to Lucky or other Asian elephants. Plaintiffs state that "[a]s to all these issues it is apparent the Parties are at an impasse and judicial intervention is . . . required." Accordingly, the Court limits its consideration to the matters identified in plaintiffs' reply.

**1. Lucky's medical and care records**

Plaintiffs initially sought "all documents and communications relating to Lucky's health and care, including her medical records, testing records, records of daily care, and related materials" from December 1, 2005 to the present." Defendant objected to this Request, including its 10-year time parameter, "as overly broad, overly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case." Subject to "all objections, including the Zoo's General Objections," the defendant agreed to produce, and since the filing of this motion, has produced "responsive, relevant documents created on or after January 1, 2014."

Plaintiffs believe a two-year span is inadequate and contend that over the past ten years, Lucky was housed with one or more elephants, as well as kept in isolation; consequently, her medical and care records for the past ten years would permit plaintiffs' experts to "evaluate the impact of the challenged conditions on Lucky's physical health over a sufficient period of time." However, Lucky previously cohabitated with Boo, an Asian elephant diagnosed with cancer and euthanized in March of 2013. Since that date, Lucky had been in isolation until very recently when, on June 27, 2016, a new elephant, Nicole, was

introduced to Lucky's habitat.[1]  Although plaintiffs argue that a ten-year span is required to evaluate the impact of the challenged conditions on Lucky's physical health, both while she was in isolation and housed with another elephant, it appears that a span of five years would achieve the same purpose.[2] Further, a span of five years would be more proportional to the needs of this case and less burdensome for the Zoo, a non-profit with limited time and resources.

Accordingly, plaintiffs' motion to compel is **GRANTED in part** to the extent plaintiffs seek documents and communications relating to Lucky's health and care, including her medical records, testing records, records of daily care, and related materials that were created on or after January 1, 2011 and **DENIED** in all other respects.

## 2. Records of other elephants

Plaintiffs seek information regarding other elephants previously housed at the Zoo that would have been exposed to the same or similar conditions as Lucky and argue this information is relevant to show that "the conditions are creating the same physical harm to multiple elephants, demonstrating any condition

---

[1] A third elephant, Karen, subsequently joined Lucky and Nicole on August 29, 2016.  ***See*** www.mysanantonio.com/nes/local/artice/San-Antonio-Zoo-adds-third-elephant.

[2] Notably, plaintiffs' expert, Scott D. Blais, the Founder & CEO of Global Sanctuary for Elephants, has followed Lucky for the past six years. (Docket no. 1, exh. A).

suffered by Lucky is not due to other causes but a direct result of the Zoo's violations of the ESA." (Docket no. 19). In particular, plaintiffs maintain this information is relevant to the issue of causation.

Information pertaining to other elephants housed at the Zoo in the same enclosure as Lucky that were exposed to the same or similar conditions is relevant to the issue of whether Lucky's current condition is the result of her treatment and care, including her living conditions. The Zoo has failed to satisfy its burden of showing that the discovery fails the proportionality calculation mandated by Rule 26(b)(1). *Areizaga*, 314 F.R.D. at 435. Considering the importance of the issues at stake in the action, the Zoo's relative access to relevant information, and the importance of the discovery in resolving the issues, plaintiffs' request shall be granted. However, considering the burden and expense of the proposed discovery, the Court will limit the information sought to records created on or after January 1, 2011.

Accordingly, plaintiffs' motion to compel is **GRANTED** to the extent plaintiffs seek medical and care records from January 1, 2011 to the present pertaining to other elephants previously housed at the Zoo in the same enclosure as Lucky that would have been exposed to the same or similar conditions as Lucky.

Plaintiffs' motion to compel this information is **DENIED** in all other respects.

### 3. Internal Zoo communications

Plaintiffs also seek to have defendant produce documents and communications related to the Zoo's accreditation from the AZA, including the Zoo's efforts to comply with the Association of Zoos and Aquariums's standards with regard to Lucky or other Asian elephants, as well as documents and communications relating to any request or proposed request for variances from the AZA's standards, including any variance relating to Lucky. Plaintiffs maintain this information is relevant because "documents relating to the actual or potential impact of the Zoo's habitat on Lucky's health and welfare speak to the factual question of whether Lucky has been injured by those conditions or facts the likelihood of injury." Defendant disputes the relevancy of this information, arguing that "[t]his is an ESA cases under which the Zoo's statutory compliance will be determined by whether the Zoo's current care of Lucky 'meet[s] or exceed[s] the minimum standards for facilities and care under the Animal Welfare Act.'"

The issue in this case is Lucky's current care and condition. Accordingly, documents and communications related to the Zoo's accreditation from the AZA are only relevant insofar as they pertain to the AZA's standards with regard to

Lucky or other Asian elephants currently housed with Lucky. Similarly, documents and communications relating to any request or proposed request for variances from the AZA's standards are only relevant to the extent they implicate variances relating to Lucky and/or her enclosure.

Accordingly, plaintiffs' motion to compel is **GRANTED** to the extent plaintiffs seek all documents and communications related to the Zoo's accreditation from the Association of Zoos and Aquariums as it pertains to Lucky and other elephants currently housed with Lucky, as well as documents and communications relating to any request or proposed request for variances from the AZA's standards relating to Lucky and her enclosure and **DENIED** in all other respects.

### 4. Efforts to Improve Conditions

Plaintiffs next maintain that defendants should be ordered to produce documents and communications relating to 1) plans or efforts to obtain additional Asian or African elephants for the Zoo; 2) plans, efforts, or considerations of improvements to Lucky's enclosure, whether implemented, rejected, or still under consideration; and 3) any plans, efforts, or considerations of improvements to any Asian elephant area of the Zoo, whether implemented, rejected, or still under consideration. Plaintiffs complain that after they filed their motion to compel, defendant

undertook efforts to remedy the deficiencies previously identified without supplementing its responses.

Clearly, any existing plans, efforts, or considerations of improvements to Lucky's enclosure, including current or recent plans to obtain and add elephants to Lucky's enclosure, are relevant. It is unclear, however, how plans, efforts or considerations to improve Lucky's enclosure that were rejected are relevant to the Zoo's current care of Lucky. Likewise, information pertaining to plans to obtain other Asian elephants for other enclosures, to obtain other animals for other parts of the Zoo, or to improve other areas of the Zoo, are not relevant to Lucky's current care and condition.

Consequently, plaintiffs' motion to compel is **GRANTED** to the extent plaintiffs seek current or recent information pertaining to plans, efforts, or considerations of improvements to Lucky's enclosure at the Zoo, whether implemented or still under consideration, including the addition of other elephants to Lucky's enclosure; plaintiffs' motion is **DENIED** in all other respects.

### 5. Zoo's compliance with the ESA

Next, plaintiffs maintain that defendant has failed to produce documents relating to the Zoo's compliance with the ESA relative to Lucky or other Asian elephants. In particular, plaintiffs seek documents and communications discussing or

12

relating to the Zoo's compliance with the ESA relative to Lucky or other Asian elephants.

Information responsive to this request pertaining to other Asian elephants not housed with Lucky does not appear to be relevant to Lucky's current care. However, to the extent plaintiffs seek documents and communications discussing or relating to the Zoo's compliance with the ESA relative to Lucky or other Asian elephants housed with Lucky, these documents are relevant and must be produced.

Accordingly, plaintiffs' motion is **GRANTED** in part to the extent plaintiffs seek information pertaining to Lucky and/or other elephants housed in her enclosure and **DENIED** in all other respects.

## II.  Interrogatories at Issue

Plaintiff also maintains that the Zoo has failed to completely answer Interrogatory Nos. 3 and 4.  Interrogatory No. 3 states: "Identify all persons participating in each of the 'almost 40 independent, 3rd party visits to [the Zoo's] elephant program' during the 'last 10 years.'"  Defendants object that a ten-year span is overbroad and have provided plaintiffs with a list of visitors dating back to January 1, 2014.  The Court agrees that the information provided is sufficient.

Plaintiffs also seek a more complete response to Interrogatory No. 4 which requests the following:

Identify and describe all factual bases for the following contentions made by the Zoo, and for each such factual ground, identify the person or persons with relevant knowledge about such facts:

    a. Lucky would suffer "stress" or otherwise would have her health jeopardized or potentially jeopardized by transport to the Elephant Sanctuary or another site;

    b. At 55 years of age, Lucky has "outlived the expected lifespan for her species by 9 years;" and

    c. Lucky has "bonded with" her Animal Care Specialists.

Plaintiffs maintain that the Zoo and its President have made several public statements regarding Lucky and should be required to provide the factual basis for these statements. In particular, plaintiffs cite to the following:

In approximately the last 10 years, we have had almost 40 independent, 3rd party visits to our elephant program. These visitors have ranged in experience and expertise from Animal Behaviorists, to Elephant Experts (both care and transportation), our peers, both scheduled and unscheduled government inspections. In each case our elephant program, our elephant care and our decision processes have been validated.;

At this time I and the Zoo team, in good conscious, could not mandate that Lucky be put in a truck to be sent across the country. IF she survived the stress of a transport at her age she would have to acclimate to a new herd (one in which she would most likely be bullied and all on the bottom of the social structure).;

Currently, Lucky is 55 years old and has outlived the expected lifespan for her species by 9 years!; and

I am confident that at her age and in her condition Lucky should live out her golden years with the Animal Care Specialists she has bonded with. See welovelucky.com.

14

Citing *Alexander v. Hartford Life & Acc. Ins. Co.*, 2008 WL 906786, at *4 (N.D.Tex. Apr. 3, 2008), plaintiffs maintain that defendant must provide a narrative response to this "contention interrogatory" which asks defendant to state the facts upon which it bases an assertion.  However, *Alexander* addressed whether the defendant could be compelled to provide the factual basis for the denials and affirmative defenses found in defendant's pleadings.  *Id.*  In the present case, plaintiffs are not seeking the factual basis of defendant's claims or defenses; instead, they seek the factual basis for statements made by the Zoo and its President.  Plaintiffs provide no authority to support their position that a statement not found in any pleading can be the basis of a contention interrogatory.  Nevertheless, while defendant need not provide a narrative response, it should identify the person or persons who made the statements.

Accordingly, plaintiffs' motion to compel defendant to supplement its responses is **DENIED** as to Interrogatory No. 3 and **DENIED** in part and **GRANTED** in part as to Interrogatory No. 4.

## 2. Expenses of Motion

Rule 37 provides that:

If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the

party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.  But the court must not order this payment if:

(i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii)   other circumstances make an award of expenses unjust.

**FED.R.CIV.P. 37(a)(5)(A)**.  Further, the rule provides that "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  **FED.R.CIV.P. 37(a)(5)(C)**.

In the present case, plaintiffs' motion has been granted in part and denied in part.  Initially, the Court notes that much of the requested discovery was provided after the motion was filed.  However, in his Certificate of Conference, Blake J. Brownshadel, counsel for plaintiffs states that "on April 1, 2016, I conferred with David King, David Smith, and Matt Baumgartner, counsel for the Zoo, in an attempt to reach an agreement on the materials requested in Plaintiffs' First Sets of Interrogatories and Document Requests. Although the parties engaged in meaningful discussion and revisited the disagreements noted in their respective letters regarding the requests, no

16

agreement was reached."   Subsequently, the parties continued to exchange emails and yet, in filing this motion three months later, Mr. Brownshadel does not indicate whether any further attempts to confer were made.

Both the Civil Rules of Procedure and the Local Court Rules require that the parties engage in a good faith attempt to confer in an effort to resolve the dispute without court action. **FED.R.CIV.P. 37(a)(1); LOCAL COURT RULES CV-7(i)**.  While it appears that some effort was made initially, it is unclear why no further attempts to confer were made during the three months between the date counsel states the parties conferred and the date this motion was filed.   In short, the Court is not altogether convinced that the parties engaged in a good faith attempt to confer in an effort to resolve the dispute. Additionally, it appears that both sides have not been entirely reasonable in propounding and responding to discovery, as evidenced by this Order which denies plaintiffs' motion in part. Accordingly, the parties' respective requests for reasonable costs incurred are **DENIED**.   Each party shall bear its own costs.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Compel (docket no. 29) is **GRANTED in part and DENIED in part** in accordance with this Order.

**IT IS ORDERED THAT** defendant produce the responsive documents in compliance with this Order within fourteen (14) days.

**SIGNED** August 31, 2016.

JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE