# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES GRAHAM, ET AL., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. SA-15-CV-1054-XR |
| SAN ANTONIO ZOOLOGICAL SOCIETY, | § § § | |
| *Defendant*. | § § § § | |

## ORDER

On this day, the Court considered "Plaintiffs' Appeal of Magistrate Judge's Order Dismissing Plaintiffs' Motion to Strike" (Docket no. 48) and Defendant San Antonio Zoological Society's Response thereto (Docket no. 55).

## BACKGROUND

Plaintiffs James Graham, Elizabeth Wymer, and Noah Khoshbin filed this suit against Defendant San Antonio Zoological Society ("the Zoo") seeking declaratory and injunctive relief against the Zoo under the Endangered Species Act ("ESA") for "taking" (*i.e.*, harming and harassing) an endangered Asian elephant named Lucky. The Plaintiffs are private citizens "interested in protecting animals and viewing them in 'humane conditions.'" Docket no. 1. Plaintiffs allege that the Zoo harms and harasses Lucky in violation of the ESA by keeping Lucky: (a) alone, without the companionship of any other Asian elephants; (b) in an enclosure that is too small; (c) with virtually no shelter from the sun; (d) with a pool that is of insufficient size for her to immerse herself and keep cool; and (e) on a hard, unnatural, species-inappropriate substrate. Docket no. 29 at 4.

1

Plaintiffs sued the Zoo on December 1, 2015 and on February 5, 2016, served the Zoo with discovery requests, including requests for production and interrogatories. Among other categories of documents, Plaintiffs requested "all documents and communications relating to Lucky's health and care, including her medical records, testing records, records of daily care, and related materials from December 1, 2005 to the present." Plaintiffs also sought discovery relating to other elephants housed at the Zoo to show that they suffered from similar problems resulting from similar conditions, to establish causation for their claims. In April and June, Defendant produced certain medical records going back to January 2014. Defendant argued that only two years of records were relevant and that Plaintiffs' discovery requests for "more than ten years of all records covering not only Lucky, but all other elephants, is not proportional to the needs of this case" and would be unduly burdensome for the Zoo. On June 30, 2016, Plaintiffs filed a motion to compel.

On July 12, 2016, twelve days after Plaintiffs filed their motion to compel and before the Zoo filed its response, the Zoo produced a number of documents responsive to Plaintiffs' requests (3,791 documents totaling nearly 7,000 pages). The production included a February 11, 2016 email between Robert Coke, the Zoo's Director of Veterinary Care, and Isabel Garcia-Trevino, Health Center Manager for the Zoo, and its attachment (referred to as the "February 11 Report"). The email itself contained no text, nor was any other recipient listed. The 550-page document attached to the email consisted of thirty-seven years' worth of Lucky's medical records from an electronic database. The Zoo describes the Report as "a report of entries regarding Lucky (no other elephants) that the Zoo's veterinarians made into an electronic database." Docket no. 46 at 8; *see also id.* at 3 (describing the Report as "a report from the Zoo's veterinary database").

According to the Zoo, the Report was created in direct response to counsel's request made during a February 10, 2016 conference call. The Zoo contends that, on that call, "the Zoo's legal counsel asked the Zoo to collect certain information relating to Lucky . . . so that counsel could, working with the Zoo's directors, review the information for the purpose of evaluating the claims, crafting defenses, and considering how to best prepare other trial strategy." Docket no. 43 at 1. The Zoo asserts that the Zoo's health center manager created the medical history report "by running search criteria against a database covering thousands of animals" and the "specific search criteria used to generate the Report were identified by the Zoo in consultation with legal counsel based on conversations with legal counsel regarding the claims, defenses, and trial strategy." *Id.* at 1-2. The Zoo had previously produced (in June) a version of Lucky's electronic medical history report from this same database dating back only two years (through January 2014). As will be discussed, Plaintiffs' counsel did not initially realize that the February 11 Report contained documents dating back to 1979,[1] and asserted in the Reply brief on the motion to compel that the Zoo's production remained deficient in part because the produced medical records covered only the prior two years. Plaintiffs' counsel gave the Report to their expert for review.

After it was fully briefed, Plaintiffs' motion to compel was referred to Magistrate Judge Primomo. He noted that, initially, Plaintiffs moved to compel production of six categories of documents responsive to ten different requests for production. He further acknowledged the Zoo's recent production, but noted that Plaintiffs maintained in their Reply that the production

---

[1] The Zoo contends that Plaintiffs had to have known that the February 11 email and Report was inadvertently produced because the Zoo was maintaining the position that it would produce only two years of Lucky's records and "could not have intended to produce 37 years' worth." Docket no. 43 at 2. The Zoo further asserts that the Report contains "far different information that Plaintiffs had even requested" because Plaintiffs sought medical records going back only ten years. *Id.* at 2-3.

3

was deficient because the Zoo limited its production regarding Lucky to a two-year period and refused to produce records of other elephants, communications with the American Zoological Association, documents relating to any plans or efforts to obtain additional Asian or African elephants or improve the challenged conditions, and documents relating to the Zoo's compliance with the ESA relative to Lucky or other Asian elephants. On August 31, 2016, Magistrate Judge Primomo issued an order compelling Defendant to produce five years' worth of Lucky's medical and care records, as well as some of the other discovery sought by Plaintiffs, including related to other elephants. Docket no. 36. He concluded that five years of records would satisfy Plaintiffs' needs and be less burdensome for the Zoo than the requested ten years. Specifically, he found a span of five years to "be more proportional to the needs of this case" and granted the motion to compel production of documents and communications relating to Lucky's health and care, including her medical records, testing records, records of daily care, and related materials that were created on or after January 1, 2011.

On December 21, Plaintiffs sent a copy of their expert's report to Defendant. References to the records contained in the February 11 Report in the expert's report caused the Zoo to realize it had inadvertently produced the email and February 11 Report. Defendant sent a letter to Plaintiffs' counsel to this effect on January 9 and January 17, noting that the email was inadvertently produced and asserting work product privilege over the documents. Plaintiffs' counsel sequestered the documents pending a resolution of this matter. When the parties could not agree on a resolution, Plaintiffs filed an emergency motion to strike Defendant's claim of work product protection. The Zoo responded, and Plaintiffs filed their Reply.

On February 13, Magistrate Judge Primomo dismissed Plaintiff's motion as moot. Docket no. 45. He noted that his Order on the motion to compel "specifically limited discovery to

records pertaining to Lucky's care created after January 1, 2011," that "unbeknownst to the Court when it entered this Order on August 31, 2016, plaintiffs were already in possession of much of the same information sought after in their Motion to Compel, a large portion of which was subsequently excluded by the Court's Order," that the February 11 Report documents were "at the heart of plaintiffs' motion to compel," and that, notwithstanding that they had sought the Court's intervention regarding production of these documents, Plaintiffs turned all of Lucky's medical records over to their expert. Magistrate Judge Primomo concluded that Plaintiffs' argument that the February 11 Report is not protected work product ignored the fact that he had issued an Order limiting discovery, such that the issue was not, as the parties argued, whether Lucky's medical records are protected from discovery, but whether the records were subject to the Court's August 31, 2016 Order and, if so, whether Plaintiffs violated this Order by providing their expert with all of Lucky's medical records.

In his Order, Magistrate Judge Primomo further directed both Plaintiffs and the Zoo to show cause why they should not be sanctioned – Plaintiffs for "knowingly and willfully disseminating documents to their expert that plaintiffs knew were the subject of plaintiffs' motion to compel and/or specifically excluded by this Court's order" and the Zoo for asserting that Plaintiffs' discovery requests were unduly burdensome "despite having earlier and easily generating, and all the while being in possession of, medical records pertaining to Lucky's care dating back to 1979." Docket no. 45 at 10-11.

In their response, Plaintiffs' counsel states that it was not immediately apparent that the records contained information created before 2011. Docket no. 47 at 3. After receiving the Zoo's production, Plaintiffs' counsel instructed a paralegal to review the production, flag all medical records, and send them to Plaintiffs' expert for review. Plaintiffs' counsel contends that,

at that time and at the time Plaintiffs filed their Reply to the motion to compel, they were unaware that the document was potentially privileged or inadvertently produced or that it contained pre-2011 records. Plaintiffs note that there was nothing about the cover email of the document (which was dated February 11, 2016 and not addressed to or from an attorney) to put them on notice, and the first 213 pages referenced medical notes from 2011 to 2016. Plaintiffs' counsel states that they only realized that the documents included pre-2011 records in late 2016, as part of their preparations with their expert. And Plaintiffs' counsel contends that they were unaware that the document was inadvertently produced or potentially privileged until alerted by the Zoo's counsel in January 2017. Because the documents were responsive to Plaintiffs' discovery requests and did not appear to Plaintiffs to be privileged, Plaintiffs assert that they had no obligation to alert the Zoo of their production and that they did not in any way violate Magistrate Judge Primomo's Order on the motion to compel.

The Zoo responded that its burdensomeness objection was made to the whole of Plaintiffs' discovery requests. The Zoo asserts that the Report represented only a small portion of the records sought by Plaintiffs in their motion to compel. *See* docket no. 46 at 2 (Zoo describes the Report as "a tiny sliver of the total documents Plaintiffs requested"). In addition to other discovery, Plaintiffs had requested "all documents and communications relating to Lucky's health and care, including her medical records, testing records, records of daily care, and related materials" dating back to 2005. The February 11 Report represents only entries retrieved from an electronic database, and does not include all referenced medical reports.

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiffs timely objected to the Magistrate Judge's order on their motion to strike the work product designation. Docket no. 48.

On March 13, Defendant filed its response to Plaintiffs' objection. Docket no. 55. On March 15, Plaintiffs filed their reply. Docket no. 57.

Plaintiffs claim that the documents in the February 11 Report are not privileged because the records were kept in the ordinary course of business and track Lucky's various injuries, ailments, and the results of veterinary checkups over the years and thus are merely factual information printed and/or communicated after the start of litigation. Plaintiffs contend that the records in the report were not created with the primary motivating purpose to assist in the litigation and the Report does not reveal any attorney thoughts or strategies. Alternatively, they contend that even if the documents are protected work product, they have demonstrated a need for the information under Rule 26(b)(3)(A).

The Zoo argues that Magistrate Judge Primomo limited the scope of discovery to only the last five years' worth of Lucky's records, and the Report was inadvertently produced privileged work product. The Zoo asserts that the Report is privileged because it was generated from the Zoo's and its counsel's attempts to prepare the Zoo's defenses and strategy in the case, it had not been created before the lawsuit was filed, it was created for the purpose of preparing the Zoo's case, and it would not have been created but for the lawsuit and the need to prepare the Zoo's case. The Zoo acknowledges that it has the burden of proving application of the work product privilege, but argues that it has met its burden because the report was prepared in anticipation of litigation and created (not merely printed) at the direct request of the Zoo's counsel in order to evaluate and craft the claims, defenses, and other trial strategy in the case.

# DISCUSSION

**Work Product**

The issue presented by the motion to strike is whether the February 11 Report is privileged work product. The Court finds that it is not. Work product privilege seeks to promote the adversary system by "safe guarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Strum, Ruger, & Company*, 864 F.2d 379 (5th Cir. 1989). However, "[t]he work product doctrine is not an umbrella that shades all materials prepared by a lawyer . . . The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542-43 (5th Cir. 1982).

The Zoo seeks to shield thirty-seven years' worth of various veterinary records as work product, alleging that counsel requested that these Lucky-specific veterinary files be pulled from "a database covering thousands of animals." Docket no. 43 at 2. While the Report was created at counsel's request for the litigation, the veterinary records compiled therein appear to be routine medical documents, and "[m]aterials assembled in the ordinary course of business" are exempt from work product privilege. *Id.* at 543. Defendant admits that the underlying records in the Report were not created with the primary purpose of assisting in future litigation. *See* Docket no. 41 at 2. The Zoo's veterinarians created the documents to track Lucky's medical history, reflect "Lucky's various ailments and health complications suffered at the Zoo," and "track[ed] the detail of dozens of veterinary checkups on a regular basis over the years." *Id.*

However, the Zoo argues that because these Lucky-specific veterinary records were compiled after the inception of litigation, the February 11 Report was created in anticipation of litigation. Docket no. 43 at 1 ("The February 11 Report was created by running search criteria

against a database covering thousands of animals."). The Zoo cites *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006), in which the court held that records that are specifically selected and compiled in preparation for litigation are opinion work product because mere acknowledgement of their selection could reveal mental impressions concerning the litigation. In addition, courts have acknowledged that "an attorney's compilation of various documents, each of which is itself a proper subject of discovery, constitutes an attorney's opinion work product subject to protection." *Willingham v. Ashcroft*, 228 F.R.D. 1, 6 (D.D.C. 2005). But not every compilation of documents is protected – the crucial factor is whether the attorney's selection of the documents or contents could reveal or provide insights into the mental processes of the attorney in the analysis and preparation of the client's case. *Shapiro v. Dep't of Justice*, 969 F. Supp. 2d 18, 32 (D.D.C. 2013). Although the Zoo contends that the search criteria were developed by counsel, the Report appears to be merely a compilation of all entries related to Lucky, and neither the email nor the records themselves reveal the mental process of the Defendant's attorneys. The Zoo voluntarily produced these same records for a limited time span of two years, and it fails to show that a compilation of all the records reveals its attorney's mental impressions or legal strategy. Therefore, the Zoo fails to prove that the Report is protected work product.

Defendant analogizes the present case to *Cormack v. United States*, 117 Fed. Cl. 392 (2014), where the court found that information that was inadvertently disclosed in an email was protected work product. In *Cormack*, the party inadvertently produced an email that disclosed the location of specific patent documents at issue in the suit. *Id.* at 396, 399. The court asked "whether the e-mail at issue reveals [defendant's] mental processes concerning the litigation or whether it merely transmitted unprivileged facts that might bear on a defense to [the] case." *Id.* at 398. The email was transmitted from one of defendant's employee's to defendant's in-house

counsel; the subject line read, "Some [I]nformation for FSS Patent Infringement"; and the email provided detailed information on the location of patents defendants refused to produce. *Id.* at 396 (alteration in the original). The court found that because the email contained such specific information, the email was privileged work product. *See id.* at 398.

Unlike *Cormack*, the veterinary records here were disclosed without any additional context; there was no text in the email to which the records were attached, the sender and recipient were Zoo employees in charge of Lucky's medical care, there was nothing in the email referencing litigation, representation, or the Zoo's counsel. Docket no. 41 at 2. The court in *Cormack* found that "the nature of the request in the email [revealed] the in-house counsel's thought process." 117 Fed. Cl. at 398. Here, a compilation of routine medical records from a database of veterinary records is hardly a specific request that would reveal defense counsel's thought process. The lack of context further obviates the claim that these records reveal the "fruits" of Defendant's trial preparations. *See id.*; *see also Mir v. L-3 Communs. Integrated Sys., L.P.*, 2016 U.S. Dist. LEXIS 95605, **15 (N.D. Tex. July 22, 2016) (holding that an email "answering a follow-up question" was a privileged work product where it revealed "counsel's legal conclusions and opinions."); *Stoffels v. SBC Communs., Inc.*, 2016 U.S. Dist. LEXIS 120647, *34 (W.D. Tex. Nov. 12, 2009) (holding that an email that included "response[s] from other client representative and attorneys" was protected work product). In fact, the Zoo does not claim that the Report amounts to opinion work product that contains mental impressions, conclusions, or legal theories. Docket no. 55 at 5. Accordingly, the Court finds that these records are not privileged work product.

Even assuming that these records were work product, Defendant has waived the privilege. "Like other qualified privileges, [work product] may be waived." *See United States v.*

*Nobles*, 422 U.S. 225, 239 (1975). "The protection from discovery provided by the work-product doctrine can be waived expressly or by implication." Fed. R. Evid. 502 (b). Rule 502(b) governing limitations on waiver of the work product privilege allows a party who inadvertently disclosed a protected document to apply privilege and claw back the document. Fed. R. Evid. R 502(b). The rule provides that a disclosure "does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." *Id.* The Zoo has failed to establish that it took reasonable steps to prevent the disclosure of the Report. In the alternative, the Court finds that Plaintiffs have established a substantial need for the documents under Rule 26(b)(3). The Court therefore grants Plaintiffs' motion to strike the work product designation.

**Rule 26(b)(1)**

Magistrate Judge Primomo never reached the question of whether the Report was protected work product because he concluded that Plaintiffs' use of the Report violated his order "limiting discovery" to a five-year period. However, the Court agrees with Plaintiffs that the Magistrate Judge's order did not limit the scope of discovery as sweepingly as Defendant contends. Magistrate Judge Primomo granted "plaintiffs' motion to compel . . . in part to the extent plaintiffs seek documents and communications relating to Lucky's health and care . . . created on or after January 1, 2011 and [denied it] in all other respects." Docket no. 36 at 8. Therefore, while the order did not compel Defendant to produce more than five years of records, it did not expressly exclude records from before 2011, nor did it *prohibit* Plaintiffs from

obtaining the documents in an alternative, legal manner or from using the records if inadvertently produced.

Rule 26(b)(1) allows parties access to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In deciding what is proportional to the needs of the case, the court may consider: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. FED. R CIV. P. 26(b)(1). In his order, Magistrate Judge Primomo did not analyze these factors to determine whether to *compel* Defendant to comply with Plaintiffs' discovery request. Docket no. 36 at 7-8.

All that was before Magistrate Judge Primomo was Plaintiffs' motion to compel, and the scope of that ruling is limited to *what the Zoo was required to produce* in response to Plaintiffs' request for production. The Order granting in part the motion to compel was not a broad order concerning the scope of permissible discovery in this case or the use of documents pre-dating 2011; the ruling on proportionality (made without the benefit of information concerning the relative ease with which the Zoo could obtain some of Lucky's medical records from its electronic database) nowhere expressly excludes evidence beyond the five-year period for which discovery was compelled. Thus, Plaintiffs' act of providing the Report to their expert, and their permitting their expert to rely on the evidence after they became aware of the Report's scope, did not violate a Court Order.

Moreover, the Order was issued after the production occurred, and the Court agrees with Plaintiffs that they were not under an obligation to retroactively cull the production or limit their

use of information to the five-year period or to notify the Zoo about the production.[2] Simply put, the Zoo produced the Report, and given its unprivileged status, there is no mechanism for clawing it back. Plaintiffs' expert reasonably relied on information in the Report to reach certain conclusions concerning Lucky's health and well-being, specifically that Lucky suffered from certain chronic conditions related to conditions at the Zoo. Although the lawsuit concerns Lucky's present health and conditions, Lucky's complete medical history in the Report is relevant, even beyond the five-year period compelled by the Magistrate Judge's order. Accordingly, the Court finds that Plaintiffs' use of the Report was not improper.

## CONCLUSION

After careful consideration, the Court finds Plaintiffs' objection to the Magistrate Judge's order dismissing their motion to strike as moot well taken. The Court therefore GRANTS Plaintiffs' Motion to Strike (Docket no. 41).

SIGNED this 18th day of April, 2017.

XAVIER RODRIGUEZ

UNITED STATES DISTRICT JUDGE

---

[2] While of course Plaintiffs would be under an obligation of candor to the Court to disclose the production to the Court during the pendency of the motion if they had become aware of it, the Court finds Plaintiffs' explanation credible that they were not aware of the scope of the Report until after the Magistrate Judge's ruling on the motion to compel.